UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN PAUL GOMEZ,

    Plaintiff,

 v.

DAVID RYAN, *et al.*,

    Defendants.

:

:

:

Case No. 2:23-cv-1058
Chief Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

John Paul Gomez filed this suit, without assistance of counsel, alleging that various individuals within Ohio's law enforcement and judicial institutions interfered with his constitutional rights as a parent. This Court dismissed Mr. Gomez's claims against six of the eight Defendants in a January 31, 2024 Opinion & Order. (Jan. 31 Order, ECF No. 77.) The matter is back before the Court on several motions, including the remaining Defendants' Motion for Judgment on the Pleadings (MJOP, ECF No. 78) and Mr. Gomez's Motion for Joinder (Mot. Joinder, ECF No. 91). For the reasons below, Defendants' Motion is **GRANTED** and Mr. Gomez's is **DENIED**.

I.   **BACKGROUND**

Mr. Gomez filed suit against Patrolman David Ryan, the City of Cambridge, and six others.[1] (Am. Compl., ECF No. 8, ¶ 1.) He alleges that these Defendants,

---

[1] The Amended Complaint names the Cambridge Police Department as a defendant, rather than the City of Cambridge. But the Cambridge Police Department is not a proper defendant to a § 1983 claim. *See Sargent v. City of*

"individually and/or collectively," acted under color of law to deprive him of his constitutional rights to parent and raise his children, to due process, and to effective assistance of counsel. (*Id.*, ¶ 4.) For purposes of the pending motions, the Court accepts as true the factual allegations in Mr. Gomez's Amended Complaint. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The Court's January 31 Order summarized the allegations at length. That summary is incorporated here by reference.

Mr. Gomez's claims against the two remaining Defendants arise from the December 7, 2019 arrest of Mr. Gomez's son, E.G. That day, an anonymous caller told a Cambridge 9-1-1 dispatcher that he saw three teenagers coming out of his neighbor's house, where he suspected they had purchased drugs or illegal firearms. (*Id.*, ¶ 132.) The caller described the teens as a heavy-set female in a white hoodie carrying a backpack and two others. (*Id.*, ¶¶ 130, 133.) Officer Ryan was en route to the area when he observed three young men walking down the street, two of whom matched the descriptions read over the radio. (ECF No. 22[2], PAGEID # 311.)

---

*Toledo Police Dep't*, 150 F. App'x 470, 475 (6th Cir. 2005) (explaining that "police departments are merely sub-units of the municipalities they serve and therefore are not proper §1983 defendants") (citation and quotation omitted). The Department recognizes that principle and offers argument assuming that Mr. Gomez's claims are against the municipality. (MJOP, PAGEID # 1145.) The Court thus construes Mr. Gomez's claims against the Department as claims against the City of Cambridge.

[2] ECF No. 22 is Patrolman Ryan's Incident/Offense Report from December 7, 2019. The Amended Complaint excerpts the Report, though it is not attached in full. The Report is nevertheless properly considered. *See Weiner v. Klais & Co., Inc.*, 108 F.3d. 86, 89 (6th Cir. 1997) (concluding that attachments to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint

Patrolman Ryan and his partner approached and asked if they could speak to the boys. (*Id.*) They also asked V.M., the boy carrying the backpack, to place it on the ground, which he did. (*Id.*) Patrolman Ryan then asked V.M. for permission to search the backpack, which he granted. (*Id.*) E.G. was not carrying the backpack, but "objected to the search." (Am. Compl., ¶ 135.) Patrolman Ryan's Incident/Offense Report describes what followed:

> As I was walking towards to bag, in order to search it, one of the other males, later identified as [E.G.], walked towards the bag, threw something on the ground, and began to pick the bag up. I gave several commands to [E.G.] of "no." However, he ignored my commands and continued to pick up the bag. Patrolman Castor then reached for the bag, and [E.G.] pulled the bag away from Patrolman Castor. However, Patrolman Castor was able to maintain control of the bag. [E.G.] yelled, "you're not touching the bag!" At this point, due to the original call, the inconsistent answers by V.M., and now [E.G.]'s reaction to me wanting to search the bag, I believed it was likely that there was a firearm inside the bag. At that point, I rushed forward, and as Patrolman Castor was able to remove the bag from [E.G.], I also pushed [E.G.] away from . . . Patrolman Castor, who now had the bag. I then advised [E.G.] to place his hands on top of his head, as I was going to pat him down for weapons, due to the totality of the circumstances. When I gave [E.G.] the command to place his hands on his head, he said, "no" and pulled a cell phone from his pocket. I then took physical control of [E.G.], by interlocking my arms through his, and maintaining control. Patrolman Castor then assisted me in placing [E.G.] in handcuffs. While we were placing [E.G.] in handcuffs, he was yelling towards [V.M.], stating that we were not allowed to search the backpack without permission. [V.M.] replied to [E.G] by stating, "I said they could look." [E.G.] was then placed in the back seat of a cruiser.

---

and are central to [his] claim"), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

(ECF No. 22, PAGEID # 311.) Footage from Patrolman Ryan's body-worn camera shows the same. (*See* ECF No. 24[3], video manually filed.) E.G. was charged with obstruction. (Am. Compl., ¶ 135.)

Mr. Gomez received a copy of the 9-1-1 call in February 2023. (*Id.*, ¶ 116.) He asserts that Patrolman Ryan "misrepresented" and "mischaracterized" the call (as reporting three *boys* leaving the neighbor's house, and not three *girls*), thus infringing on Mr. Gomez's constitutional right to parent his child. (*See id.*, *e.g.*, ¶¶ 137, 145.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the

---

[3] Mr. Gomez's Amended Complaint also incorporates Patrolman Ryan's body-cam footage. (*See* Am. Compl., ¶¶ 146–149.)

4

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions. *See Martin v. Overton*, 391 F.3d. 710, 714 (6th Cir. 2004). Indeed, his "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B. Analysis

Patrolman Ryan and the City of Cambridge move for judgment on the pleadings. (MJOP.) Mr. Gomez responded. (Resp.) Three days later, he moved for leave to file a supplement *instanter*. (Supp., ECF No. 82.) The remaining Defendants moved to strike the supplement. (ECF No. 84.) Because the Court prefers to decide matters on their merits, Mr. Gomez's motion for leave is **GRANTED** and Defendants' Motion to Strike the supplement is **DENIED**. The Court now turns to the substance of Defendants' Motion.

#### 1. Patrolman Ryan

Mr. Gomez brings official- and individual-capacity claims against Patrolman Ryan. (*See* Am. Compl., ¶ 193.) But it is well-established that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Mr. Gomez's official capacity claims against Patrolman Ryan will thus be considered as claims against the City of Cambridge.

Patrolman Ryan raises a qualified-immunity defense to Mr. Gomez's individual-capacity claims. Qualified immunity is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Accordingly, it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

An official is entitled to qualified immunity so long as he has not violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). The analysis is two-pronged: Courts must determine first whether the facts make out a violation of a constitutional right and, second, whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### a)     Clearly Established Constitutional Right

Mr. Gomez alleges that Patrolman Ryan deprived him of the right to custody of E.G. The right of parents to raise their children is a clearly established due process right. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (explaining that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *but see*

6

*Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (noting that "the right to family integrity, while critically important, is neither absolute nor unqualified").

### b) Violation Thereof

The constitutional rights at issue are Mr. Gomez's rights as a parent.[4] The Sixth Circuit recently held that "substantive due process claims based on the right to family integrity require that the [defendant] state official act with a culpable state of mind directed at the family relationship." *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023). "[A]ctions that collaterally impact the family relationship" will not support a claim to vindicate those rights. *Id*. None of the facts alleged in Mr. Gomez's Amended Complaint support an inference that Patrolman Ryan *directed his actions at* the relationship between Mr. Gomez and his son. His actions may have affected Mr. Gomez in his capacity as E.G.'s father—but any such effect was incidental to their purpose. Because the Amended Complaint fails to allege that Patrolman Ryan violated Mr. Gomez's clearly established constitutional rights, Patrolman Ryan is entitled to qualified immunity.

### 2. The City of Cambridge

The scope of Mr. Gomez's claim against the City of Cambridge is entirely unclear from his papers. In certain instances, he argues that the City wronged him

---

[4] Despite the myriad references to other constitutional rights in his papers (*see e.g.*, Resp., PAGEID # 1170 (discussing First, Fourth, Fifth, and Fourteenth Amendment rights)), Mr. Gomez does not assert a valid claim against Patrolman Ryan for violation of any other right. For example, Mr. Gomez references the Fourth Amendment right against unreasonable search and seizure. But the Amended Complaint does not allege that Patrolman Ryan infringed upon Mr. Gomez's Fourth Amendment rights—and he lacks standing to vindicate his son's.

7

by allegedly concealing the 9-1-1 call, despite a purported duty to disclose. (*See, e.g.*, Supp., PAGEID # 1207.) Elsewhere, he asserts that "the focus here is . . . Cambridge Police's failure to train Ryan and its participation to cover up Ryan's intentional violation of my constitutional rights as a parent[.]" (*Id.*, PAGEID # 1172.) Nevertheless, § 1983 does not "incorporate doctrines of vicarious liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Accordingly, "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, "[n]o constitutional violation means no municipal liability." *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 367 (6th Cir. 2017) (citation omitted). Because Mr. Gomez has not alleged a violation of his constitutional rights, his claims against the City of Cambridge also fail.

*     *     *

Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

### III.  MOTION FOR JOINDER

Mr. Gomez also filed a motion seeking leave to join three new defendants based on an event that took place in 2019. (Mot. Joinder.) Although styled as a motion for leave to file supplemental pleadings under Rule 15(d), the motion is properly construed as seeking leave to amend his complaint under Rule 15(a). *See* 6A Fed. Prac. & Proc. Civ. § 1504 (3d ed.) (explaining that amended pleadings relate to matters that occurred before the original pleading was filed, while supplemental pleadings relate to matters that occurred after).

The Federal Rules of Civil Procedure generally allow a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citations omitted). "Nevertheless, leave to amend should be denied if the amendment . . . would be futile." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (internal citation and quotation omitted). An amendment is futile if it could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

Mr. Gomez seeks to amend his complaint to allege that an error in a 2019 police report operated to deprive him of his constitutional right to parent. The proposed amendment is a perfect analog to the allegations against Patrolman Ryan and the City of Cambridge: Here, Patrolman Ryan, an officer of the City of Cambridge, "misrepresented" the 9-1-1 call as alerting to boys—instead of girls. There, Deputies Braniger and Rogers, officers of Guernsey County, "misrepresented" Mr. Gomez's ex-wife as having a warrant out of Athens County—instead of Allegheny County. There are still no facts giving rise to an inference that the error was intentionally directed at Mr. Gomez's relationship with E.G. Thus, the amendment would fail to survive a motion to dismiss and is futile.

Mr. Gomez's Motion for Leave of Court is **DENIED**.

IV. **NOTICE OF OHIO SUPREME COURT ACTION**

Finally, Mr. Gomez notified this Court that he was recently declared a vexatious litigator by the Ohio Supreme Court. (ECF No. 96.) "Federal courts have

9

recognized their own inherent power and constitutional obligation to protect themselves from conduct that impedes their ability to perform their Article III functions and to prevent litigants from encroaching on judicial resources that are legitimately needed by others." *Johnson v. University Housing*, No. 2:06-cv-628, 2007 WL 4303728, at *12 (S.D. Ohio Dec. 10, 2007) (Holschuh, J.) (citing *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986)). The Sixth Circuit Court of Appeals has upheld the imposition of prefiling restrictions on vexatious litigators. *Id.* (collecting cases). Given Mr. Gomez's demonstrated willingness to file repetitive and baseless actions that strain judicial bandwidth, the Court finds it appropriate to follow the Ohio Supreme Court in declaring him a vexatious litigator.

Mr. Gomez is **DEEMED A VEXATIOUS LITIGATOR** and is **ENJOINED** from filing any new actions without either (i) submitting a statement from an attorney licensed to practice in this Court certifying that there is a good faith basis for the claims Mr. Gomez seeks to assert, or (ii) tendering a proposed complaint for review by this Court prior to filing. He is further **ORDERED** to include the captions and case numbers of all of his prior actions with any complaint filed in this Court or any other court.

V.   **CONCLUSION**

For the reasons above, Mr. Gomez's motion for leave to file a supplemental response (ECF No. 82) is **GRANTED** and Defendants' motion to strike the supplement (ECF No. 84) is **DENIED**. Defendants' Motion for Judgment on the Pleadings (ECF No. 78) is **GRANTED**. And Mr. Gomez's Motion for Joinder is **DENIED**.

Mr. Gomez is **ENJOINED** from filing any future action in this Court without first seeking leave or obtaining the endorsement of a licensed attorney.

The Clerk is **DIRECTED** to **TERMINATE** this case.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**CHIEF UNITED STATES DISTRICT JUDGE**